Judge EDWIN A. LOMBARD.
h Gerald Mitchell appeals his conviction for attempted possession of crack cocaine. After review of the record in light of the applicable law and arguments of the parties, we affirm the appellant’s conviction and sentence.

Relevant Facts

The appellant and Courtney Conway were arrested on December 31, 2004, and charged with possession of crack cocaine and prohibited drug paraphernalia. On January 27, 2005, the appellant and Conway were charged by bill of information with one count each of violating La.Rev. Stat. 40:967(0(2), possession of crack cocaine. The appellant pleaded not guilty at his arraignment on February 4, 2005, and subsequently filed a motion to suppress the evidence. The trial court held a motion and preliminary hearing on April 29, *746 2005, and on May 6, 2005, denied the appellant’s motion and found sufficient probable cause to substantiate the charge brought against him by the State.
The following evidence was adduced at the bench trial on June 27, 2005.
Officer Jamie Cohen of the New Orleans Police Department (NOPD) testified that on December 31, 2004, she was on patrol in a marked unit with her partner, Officer Melvin Williams, in the Sixth District, driving on South Robertson |gStreet toward Jackson Avenue. As they approached [1] the intersection of South Robertson and Jackson, Officer Cohen observed a black Chevrolet Malibu (“the Malibu”) parked near the intersection with the appellant and Conway standing near the passenger door. She then observed an arm extend out of the Malibu and hand something to Conway in exchange for currency. After the exchange, the appellant turned and spotted the police unit. According to Officer Cohen, the appellant said something to the Malibu’s passenger, at which point the Malibu left the scene and turned onto Jackson Avenue toward South Claiborne Avenue at a high rate of speed. Officer Cohen and her partner initially followed the Malibu but quickly called off the pursuit because there were numerous pedestrians present, and the Malibu was traveling at a high rate of speed and weaving in and out of traffic. Accordingly, the officers made a u-turn and drove down Jackson Avenue towards the Mississippi River where they saw the appellant and Conway walking together on the uptown side of Jackson Avenue. As the officers approached, the two men turned down an alleyway near 2418 Jackson Avenue. Officer Cohen stopped the vehicle and her partner asked the defendants to step towards him. According to Officer Cohen, after both the appellant and Conway refused Officer Williams’ request and continued down the alleyway, Officer Williams placed them under arrest for possession of crack cocaine. In the search incidental to the arrest, Officer Cohen discovered a rock of crack cocaine on Conway (which was subsequently at trial as part of State’s Exhibit One — a clear plastic bag containing three rocks of cocaine and two glass tubes). Officer Cohen identified the smallest of the three | arocks as the piece of crack cocaine that she confiscated from Conway and identified Conway and the appellant in court as the perpetrators.
Officer Williams testified, confirming Officer Cohen’s testimony. Officer Williams stated that after terminating the pursuit of the Malibu, he and Officer Cohen turned around on Jackson Avenue and, after looking for Conway and the appellant, located them in the vicinity of 2418 Jackson Avenue. After spotting the subjects, the officers stopped their vehicle and got out to investigate. Conway and the appellant noticed the officers and then stepped through a wrought iron gate opening onto an alleyway alongside 2418 Jackson Avenue, heading towards a side door. When Officer Williams ordered them to stop and approach him, Conway looked over her shoulder and handed a clear plastic bag to the appellant who then tossed the bag next to some steps leading into the building at 2418 Jackson Avenue. Officer Williams stated that because the alleyway was tight, and in order to avoid a physical altercation or foot pursuit, he did immediately reveal that he saw the appellant toss the bag to the ground and, therefore, he retrieved the plastic bag only after the appellant and Conway were escorted out of the alleyway. Officer Williams testified that the bag con *747 tained two glass tubes (which he recognized as crack pipes) and three pieces of a rock-like substance that he believed to be crack cocaine. When presented with State’s Exhibit One, Officer Williams identified the tubes and the crack cocaine as the items found by him in the alleyway. Further, Officer Williams testified that several other people later came out of the house at 2418 Jackson Avenue and were arrested at the scene for interfering with a police investigation.
1/The State also introduced State’s Exhibit Two, which comprised a report prepared by William Gibbon wherein he stated that he tested the rock-like substances found in State’s Exhibit One and that they tested positive for cocaine.
The appellant and Conway testified in their own defense, offering versions of events which differed greatly from the testimony presented by Officers Cohen and Williams. Conway testified that on December 31, 2004, she was a guest of the appellant at his efficiency apartment at 2418 Jackson Avenue. Conway stated that she was there in the back of the house with “Sweetie” and “Al” to drink, play, cards, and celebrate New Year’s Eve.[2] At some point another friend, “For Sure,” came in and stated that the police were following him.[3] Conway then heard several knocks at the door and a voice announcing that the police were at the door and ordering the occupants to open the door. Conway ordered the occupants of the room to get off of a mattress in the room so that she could hide under it. After Conway hid under the mattress, someone opened the door and allowed the police to come inside the house. The police first ordered the men to lie on the ground and then took the men out of the house. According to Conway, another officer came in later, looked under the mattress, found her, and then took her out of the house. After being placed in a police car with the appellant, “Sweetie,” and “Al,” Conway asked the appellant what happened and he told her that he was in the alley when “For Sure” ran past him followed by the police, only to be wrestled to the ground by the police. When they all arrived at central lockup, Conway noticed that the other men were charged with interfering with a police investigation, while she and the appellant were charged with possession of crack cocaine.
5Conway denied purchasing crack cocaine on the date of the incident and, likewise, denied possessing crack cocaine or crack pipes at the time of the arrest. Further, Conway also denied giving any crack cocaine or pipes to the appellant at any time or being in the alley with the appellant. Conway did admit to having one prior conviction for prescription forgery. When asked to speculate why she was charged with possession when the police had been chasing “For Sure,” Conway stated that she assumed that the police were angry because they could not catch “For Sure” and they had to come into the appellant’s apartment to find him only to find that everyone inside denied possessing the crack found by the police under the house. When asked on cross-examination why the police charged her with possession of crack cocaine instead of “For Sure”, Conway responded by stating: “It doesn’t work like that on the street.” Finally, Conway asserted that she had no reason to lie about the events at issue because her arrest constituted a probation violation *748 that would result in her being sent to jail regardless of her conviction in the present matter.
The appellant testified that on December 31, 2004, at approximately 2:00 p.m. he was returning to his apartment from his girlfriend’s home to meet with several friends and celebrate New Year’s Eve. As he was in the alleyway next to his apartment, he noticed his friend Nathaniel running through the alleyway. After Nathaniel passed, the appellant noticed that Nathaniel was being followed by two police officers. The appellant left the alleyway and was wrestled down by two other police officers and put in a police vehicle. The appellant claimed that he learned the nature of the charges against him only after arriving at Central Lockup. On cross-examination, the appellant admitted to a prior conviction for simple burglary in 1992 but denied ever possessing crack cocaine or purchasing crack | (¡cocaine with Conway. The appellant had no explanation for why he and Conway were charged with possession of crack cocaine when the police had initially been pursuing his friend Nathaniel.
After the close of evidence, the trial court found the appellant and Conway guilty of the lesser-included offense of attempted possession of crack cocaine. On July 21, 2005, the appellant was sentenced to one year in the custody of the Department of Corrections. This appeal was timely filed.

Error Patent Review

A review of the record indicates that the discrete minute entry setting out the appellant’s sentence is missing. However, the record does contain the docket master for his case and a transcript from the sentencing hearing which both set out the appellant’s sentence. Accordingly, the lack of a minute setting out the appellant’s sentence is harmless error.

Assignment of Error No. 1

In his sole assignment of error, the appellant argues that his conviction and sentence should be reversed because the evidence adduced at trial was insufficient to prove that his momentary, incidental possession of the crack cocaine was knowing or intentional. The appellant sets out the argument in support of his assignment of error in a single paragraph, to wit:
While knowledge and intent can ordinarily be inferred from the fact of possession, this is plainly not the ordinary possession situation. On the contrary, Mr. Mitchell’s reaction of immediately discarding the plastic baggie that Ms. Conway suddenly and unexpectedly handed to him can lead to only one inference — that Mr. Mitchell received something that he quickly realized he had no desire to possess.
The appellant’s argument, although novel, is not persuasive.
|7In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4th Cir. 1991). “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992). When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982).
*749 To support a conviction for possession of an illegal drug in violation of La.Rev.Stat. 40:967, the State must prove that the defendant was (1) in possession of the illegal drug and (2) that he knowingly possessed the drug. State v. Chambers, 563 So.2d 579, 580 (La.App. 4 Cir.1990). The State need not prove that the defendant was in actual physical possession of the drug found; constructive possession is sufficient to support a conviction. State v. Trahan, 425 So.2d 1222 (La.1983). To prove attempt, the State must show that the defendant committed an act tending directly toward the accomplishment of his intent, possession of the drug. See La. Rev.Stat. 14:27; see also Chambers, 563 So.2d at 580. The mere presence of the defendant in the area where the drugs are found, or the mere fact that the defendant knows the person in actual possession, is insufficient to prove constructive possession. However, a person found in the area of the contraband may be considered in constructive possession if the illegal substance is subject to |shis dominion and control or if he is in joint possession of a drug which is in the physical possession of a companion if he willfully and knowingly shares with the other the right to control the drug. Chambers, 563 So.2d at 581. Guilty knowledge is the essential element. Id. In determining whether a defendant exercised sufficient “dominion and control” over the narcotics to constitute constructive possession a reviewing court should consider the following factors: (1) the defendant’s knowledge that illegal drugs are in the area; (2) the defendant’s relationship with the person found to be in actual possession; (3) the defendant’s access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) the defendant’s physical proximity to the drugs; and (5) any evidence that the particular area was frequented by the drug users. Chambers, 563 So.2d at 581.
In the present case, the appellant argues that the fact that he discarded the baggie containing crack cocaine, immediately after Conway handed it to him, indicates that he did not have the requisite intent to possess the narcotics. However, the testimony presented by the police officers supports the appellant’s conviction and, clearly, the trial court found the police officers’ testimony more credible than that of either defendant. See State v. Huckabay, 2000-1082 (La.App. 4 Cir 2/6/02), 809 So.2d 1093 (a factfinder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence).
Thus, the evidence indicates that the appellant was standing with Conway as she bought crack cocaine from an unidentified individual in the Malibu and, accordingly, given his proximity to the transaction, it is logical to infer that the appellant knew what Conway was purchasing. The police officers also testified that it was the appellant who first noticed their vehicle and warned the occupants |flof the Malibu and Conway of their impending arrival, thereby precipitating the Malibu’s escape and a hasty exit from the scene of the transaction by Conway and the appellant. Based on the appellant’s actions, it is logical to infer guilty knowledge on the part of appellant.
Moreover, a review of the appellant’s actions immediately before his arrest show that he possessed the crack cocaine, if only for a moment. Although the appellant contends that his immediate disposal of the package containing the crack cocaine is indicative of his intent to have nothing to do with it, the record indicates otherwise. Specifically, Officer Williams testified that the appellant, immediately after being handed the plastic bag and without examining its contents, discarded the bag next to the steps leading into his apartment on the side of the steps not visible to the *750 approaching officers. Thus, the action of the appellant in discarding the bag in a place which he believed was not visible to the police, was an act “tending directly toward the accomplishment of his intent,” and, as such, supports his conviction for attempted possession. In addition, it may be inferred from the two crack pipes found in the bag that the crack cocaine was intended for more than one person.
Accordingly, there is evidence in the record to show that: (1) the appellant knew that illegal drugs were in his immediate vicinity; (2) the appellant and Conway were friends; (3) the appellant had access to the discarded drugs because he discarded them next to the steps leading into his apartment; and (4) the appellant was in very close physical proximity to the drugs and, in fact, had actual possession of the drugs for a short moment. Accordingly, we find that sufficient evidence supports the appellant’s conviction for attempted possession of crack cocaine.
| 10 Conclusion
The appellant’s conviction and sentence are affirmed.
AFFIRMED.

. Officer Cohen stated that they were approximately half a block from the intersection when she observed the activities of the appellant and his co-defendant.

. Conway explained that she only knew the two men by their nicknames and did not know their legal names.

. Conway testified that “For Sure's” real first name is Nathaniel but that she did not know his last name.